IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TERRI M. D.,

                            Plaintiff,

          v.                                         Civil Action No.
                                                     1:24-CV-801 (DEP)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,


                            Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

DENNIS KENNY LAW                  JOSEPHINE GOTTESMAN, ESQ.
288 North Plank Road
Newburgh, NY 12550

FOR DEFENDANT

SOCIAL SECURITY ADMIN.            KRISTINA D. COHN, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on August 7, 2025, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)     Plaintiff's motion for judgment on the pleadings is GRANTED.

2)     The Commissioner's determination that plaintiff was not

---

[1]     This action is timely, and the Commissioner does not argue otherwise.   It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.   Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

      3)    The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

      4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:    August 14, 2025
            Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
TERRI D.,

                                        Plaintiff,

-v-                                     24-CV-801

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
-----------------------------------------------------x
```

**DECISION TRANSCRIPT**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
August 7, 2025
100 South Clinton Street, Syracuse, NY 13261


For the Plaintiff:

    DENNIS KENNY LAW
    288 North Plank Road
    Newburgh, New York 12550
    BY:  **JOSEPHINE GOTTESMAN, ESQ.**

For the Defendant:

    Social Security Administration
    Office of the General Counsel
    6401 Security Boulevard
    Baltimore, MD 21235
    BY:  **KRISTINA D. COHN, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all parties present be telephone.

2  Time noted:  2:13 p.m.)

3          THE COURT:  Let me begin by commending both

4  attorneys.  I appreciate your spirited arguments and your

5  excellent written presentations.

6          Before I address the merits of the case, I wanted to

7  broach the subject of consent.  The consent form that was filed,

8  Docket No. 7, on June 26, 2024, appears to be intended to

9  consent to the jurisdiction of a United States magistrate judge,

10  without specifying which judge, to conduct proceedings with

11  direct review to the Second Circuit Court of Appeals.

12  Unfortunately, the form that was filed is not signed and it

13  should have been rejected, but the Clerk's Office nonetheless

14  filed it.

15          So my first question to you, Attorney Gottesman, is:

16  Does your client consent to my deciding this case with direct

17  appeal to the Second Circuit Court of Appeals?

18          MS. GOTTESMAN:  Yes, your Honor.

19          THE COURT:  Excellent.  Thank you.

20          I have before me a challenge to an adverse

21  determination by the Commissioner of Social Security finding

22  that the plaintiff was not disabled at the relevant times and

23  therefore not entitled to the benefits for which she applied.

24  The proceeding is brought pursuant to 42, United States Code,

25  Section 405(g).

1          The background is as follows:  Plaintiff was born in

2    January of 1974.  By my calculation, she is 51 years of age.

3    She was 46 at the alleged onset of disability on December 16,

4    2019, and 49 on the date of last insured status of March 31,

5    2023.  She stands 5'6" in height and weighs approximately 140 to

6    154 pounds.

7          Plaintiff is either separated or divorced.  It's

8    unclear whether the divorce actually occurred.  In 2022, she was

9    at least separated.  She has one child who, by my calculation,

10   is roughly 21 years of age.

11          Plaintiff has two Associate's degrees, in nursing and

12   early childhood.  She attended regular classes while in school.

13   She is a Registered Nurse.  Plaintiff drives.

14          Plaintiff last worked in December of 2019, although

15   at page 48, at the hearing she testified that it could have been

16   2018.  When she was working, she served as a substitute school

17   bus attendant, a bakery cashier, a nurse case manager, a pre-

18   and postoperation nurse, a PACU nurse, and a nursing home nurse.

19          Plaintiff suffers physically from lupus and

20   inflammatory arthritis, lumbar degenerative disc disease,

21   trochanteric bursitis of the left hip, polyarthritis or

22   arthralgia, fibromyalgia, and chronic fatigue syndrome, and

23   undergoes infusions roughly every two weeks.

24          Mentally, she suffers from anxiety, attention deficit

25   and hyperactivity disorder, depression, panic disorder, and

1   posttraumatic stress disorder or PTSD.  She was hospitalized in

2   2006, again in 2011, for suicide attempts, and in 2016 for an

3   overdose.  She has a history of opioid and alcohol abuse.  In

4   2017, she underwent treatment and is currently on a Suboxone

5   protocol.

6            She has a history of sexual and physical abuse in her

7   past, being the victim of it, not committing it, and she sees a

8   therapist and a psychiatrist.

9            Plaintiff is a smoker.  She apparently smokes roughly

10  one half pack a day.  That's at 339 and 349 of the

11  Administrative Transcript.

12           In terms of activities of daily living, plaintiff is

13  able to dress, bathe, groom, cook, clean, do laundry, shop,

14  drive, and take public transportation.  She gardens and takes

15  care of her flowers.  She engages in some socialization.  She

16  watches TV, listens to the radio, and reads.

17           Procedurally, plaintiff applied for Title II benefits

18  on January 16, 2020, alleging an onset date of December 16,

19  2019.  At page 270, she alleged disability based on lupus,

20  anxiety, depression, ADHD, PTSD, bilateral hips, bilateral feet,

21  Lyme disease, and neuropathy.

22           A hearing was conducted on May 16, 2023, by

23  Administrative Law Judge Davida Isaacs with a vocational expert

24  also testifying.  On August 10, 2023, the Administrative Law

25  Judge issued an unfavorable decision, which became a final

1    determination of the agency on April 24, 2024, when the Social

2    Security Administration Appeals Council denied plaintiff's

3    application for review.  This action was commenced on June 21,

4    2024, and is timely.

5              In the decision, the Administrative Law Judge applied

6    the familiar five-step sequential test for determining

7    disability, first, noting that plaintiff was last insured on

8    March 31, 2023.

9              At step one, the Administrative Law Judge concluded

10   plaintiff had not engaged in substantial gainful activity during

11   the relevant period.

12             At step two, the Administrative Law Judge found that

13   plaintiff does suffer from severe impairments that impose more

14   than minimal limitations on her ability to perform basic work

15   functions, including lupus/inflammatory arthritis, degenerative

16   disc disease of the lumbar spine, and trochanteric bursitis of

17   the left hip.

18             At step three, the Administrative Law Judge found

19   that plaintiff's conditions do not meet or medically equal any

20   of the listed presumptively disabling conditions set forth in

21   the regulations, specifically considering listings 1.18, 14.02,

22   and 14.09.

23             After surveying the record evidence, the

24   Administrative Law Judge concluded plaintiff retains the

25   residual functional capacity, or RFC, to perform light work as

1    defined in the regulations, except she should never climb

2    ladders/scaffolds.  She should avoid all exposure to unprotected

3    heights and large moving machinery.  She could no more than

4    occasionally reach overhead bilaterally.  She could no more than

5    frequently reach, handle, and finger bilaterally.  She could

6    stand/walk for no more than four hours in a workday.

7              Applying that RFC finding at step four,

8    Administrative Law Judge Isaacs concluded that plaintiff is

9    capable of performing her past relevant work as a utilization

10   review coordinator, with the assistance of testimony from a

11   vocational expert, as both actually performed and generally

12   performed in the national economy.

13             Alternatively, at step five, the Administrative Law

14   Judge concluded that there is other available work in the

15   national economy that plaintiff is capable of performing, citing

16   as examples cashier II and medical office receptionist and,

17   therefore, concluded that plaintiff was not entitled to the

18   benefits for which she applied.

19             I note, and I'll come back to this, that there are

20   several misstatements in the Administrative Law Judge's

21   decision.  The relevant period in this case ended on March 31,

22   2023.  However, the Administrative Law Judge attributes

23   treatment notes of June 24, 2022, that's at 367; September 15,

24   2022, that's at 365; April 27, 2022, that's at 369, to occurring

25   after the relevant period closed and, also, treats the opinions

1  of Dr. M. Kirsch, found at Exhibit 3A, and Dr. Bhoiwala as

2  coming after the date of last insured when, in fact, they both

3  are dated within the relevant period.

4         As the parties know, the Court's function in this

5  case is limited to determining whether correct legal principles

6  were applied and the resulting determination is supported by

7  substantial evidence, defined as such admissible evidence as a

8  reasonable person would find sufficient to support a conclusion.

9         The standard of review was addressed by the Second

10  Circuit Court of Appeals in *Brault v. Social Security*

11  *Administration Commissioner,* 683 F.3d 443, Second Circuit,

12  June 29, 2012, and has been reiterated many times, including in

13  *Schillo v. Kijakazi*, 31 F.4d 64, from the Second Circuit, 2022.

14         In this case, the plaintiff's contentions are, number

15  one, the residual functional capacity finding is not supported

16  by substantial evidence; two, the medical opinion evidence in

17  the record was erroneously evaluated; three, there was an

18  inadequate analysis of plaintiff's subjective complaints of pain

19  and resulting limitations pursuant to SSR, or Social Security

20  Ruling, 03-2p and 16-3p; and four, those errors infect the step

21  four and step five vocational expert testimony.

22         Again, the relevant period in this case is

23  December 16, 2019, through March 31, 2023.  The first task, of

24  course, and pivotal to the disability analysis is a

25  determination of the plaintiff's RFC, which represents a finding

1    of the range of tasks the claimant is capable of performing

2    notwithstanding the impairments at issue, 20 C.F.R. Section

3    404.1545(a), *Tankisi v. Commissioner of Social Security*, 521 F.

4    App'x 29, from the Second Circuit, 2013.

5            Ordinarily, an RFC represents a claimant's maximum

6    ability to perform sustained work activities in an ordinary

7    setting on a regular and continuing basis, meaning eight hours a

8    day for five days a week or an equivalent schedule.  And, of

9    course, the RFC determination is informed by consideration of a

10   claimant's physical and mental abilities, symptomology, and

11   other limitations that could interfere with work activities on a

12   regular and continuing basis, as well as all of the relevant

13   medical and other evidence.

14           In this case, the starting point of the RFC is light

15   work as defined in the regulations, including 20 C.F.R. Section

16   404.1567(b).  It's also indicated in Social Security Ruling, or

17   SSR, 83-10.  And significantly, there are weight limitations on

18   lifting and carrying.  And the regulations state a job in this

19   category requires a good deal of walking or standing or when it

20   involves sitting most of the time with some pushing and pulling

21   of arm and leg controls.  The case law has fleshed out that a

22   full range of light work normally requires intermittent standing

23   or walking for a total of approximately six hours of an

24   eight-hour workday with sitting occurring intermittently during

25   the remaining time, *Poupore v. Astrue*, 566 F.3d 303, Second

1    Circuit, 2009.

2          As Commissioner's counsel pointed out, the RFC is

3    further limited in this case by requiring only the plaintiff to

4    never climb ladders and scaffolds, avoiding exposure to

5    unprotected heights and large moving machinery, no more than

6    occasional reaching overhead bilaterally, no more than frequent

7    reaching, handling, and fingering bilaterally, and standing or

8    walking is further restricted to four hours in a workday.

9          One of the bases for the conclusion of the RFC by the

10   ALJ is consideration of the medical opinions of record.  Since

11   the application in this case was filed after March 27, 2017, the

12   case is subject to amended regulations concerning consideration

13   of opinion evidence under which the Commissioner no longer

14   defers or gives special evidentiary weight to any medical

15   opinion, but instead must consider whether they are persuasive

16   by primarily considering whether they are supported by and

17   consistent with the record in the case, 20 C.F.R. Section

18   404.1520(c).

19         The Administrative Law Judge must articulate in his

20   or her determination how persuasive he or she finds each medical

21   opinion and explain how the factors of supportability and

22   consistency of those opinions was considered.  And those

23   explanations must be sufficient to allow for meaningful judicial

24   review.

25         If there are conflicts in the medical opinions,

1  however, it is in the first instance for the Administrative Law

2  Judge to resolve those conflicts, *Veino v. Barnhart*, 312 F.3d

3  578, from the Second Circuit, 2002.

4          We start, of course, with the proposition that it is

5  plaintiff's burden to establish her limitations based on her

6  medical conditions, *Poupore v. Astrue,* 566 F.3d 303, Second

7  Circuit, 2009, which I cited earlier.

8          In terms of mental, plaintiff's medical records

9  include a prior administrative finding by Dr. S. Hennessey dated

10  December 21, 2020.  It appears at pages 90 through 99 of the

11  Administrative Transcript.  Dr. Hennessey finds no severe mental

12  impairment.  The Administrative Law Judge concluded that that

13  determination was persuasive, that's at page 18 of the

14  Administrative Transcript, finding that it is both supported by,

15  and consistent with, treatment records.  And I agree, the

16  treatment notes concerning plaintiff's mental condition show

17  that her ADHD and anxiety were well controlled.  And I note that

18  the record contains no notes of the psychiatrist or therapist

19  that plaintiff has treated with for her mental conditions.

20          The record also contains the opinion of Dr. K.

21  Lieber-Diaz.  It's a prior administrative medical finding dated

22  August 12, 2022.  It's at page 101 to 114, again, affirming that

23  there's no severe mental impairment.  It is found to be

24  persuasive at page 18, and with the same reasons.

25          There is a mental assessment by an examining

1  consultative examiner, Dr. David Schaich, from November 20,

2  2020.  That's at 333 to 337 of the Administrative Transcript.

3  And the doctor finds some limitations:  Significantly moderate

4  limitation in the ability to interact adequately with

5  supervisors, coworkers, and the public; moderate limitation in

6  the ability to sustain concentration and perform a task at a

7  consistent pace; and moderate limitation in the ability to

8  regulate emotions, control behavior, and maintain wellbeing.

9          The Administrative Law Judge considered that medical

10  source statement at pages 18 and 19, and found it not to be

11  persuasive.  The reasons stated are that the examination of the

12  doctor did not support the conclusions.  Secondly, many primary

13  care records indicated that plaintiff's Adderall prescription

14  was effectively controlling her ADD.  Third, the claimant's

15  baseline past relevant work required sophisticated, rather than

16  just superficial, interaction with coworkers and

17  patients/customers.  Four, there's no meaningful evidence of a

18  decrease in her function.  And five, the other evidence

19  regularly reported that claimant's anxiety and ADHD have been

20  controlled.  And it cites an example at part of Exhibit 5F.

21          The Administrative Law Judge was entitled to resolve

22  the conflicts between that report and the prior administrative

23  medical findings.  The prior administrative medical findings, if

24  supported, can provide substantial evidence for a determination,

25  *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761 from the Second

1  Circuit Court of Appeals, 2023.  So I find no error with regard

2  to the mental component of the RFC and the fact that there were

3  no mental-related limitations contained in it.

4          Physically, the record contains, again, prior

5  administrative findings in this case by, first, Dr. K. Waldman,

6  January 25, 2021, at 90 to 99 of the Administrative Transcript

7  and, secondly, Dr. M. Kirsch from August 15, 2022, at 101 to 114

8  of the Administrative Transcript.

9          Dr. Kirsch opined that plaintiff's capable of

10  performing basically light work.  The Administrative Law Judge

11  found it to be partially persuasive at page 17, but found that

12  plaintiff was more limited.  I don't find any error in that

13  determination.  And similarly, with regard to Dr. Waldman --

14  that was Dr. Kirsch.  And Dr. Waldman found no evidence

15  sufficient to establish a mentally determinable physical

16  impairment.  That was rejected by the Administrative Law Judge

17  at page 18 and I find no error in that determination.

18          The last medical report -- one of the last --

19  speaking to plaintiff's physical condition is from Dr. Heather

20  Kidd and it was the result of a consultative examination

21  occurring on November 20, 2020.  Dr. Kidd concluded that

22  claimant has mild limitations in squatting, kneeling, and

23  overhead reaching.  The Administrative Law Judge found that that

24  was not supported and finds greater limitations at page 18.

25          I note that at step five, the Administrative Law

1    Judge found -- well, let me back up.

2           The RFC contains a limitation to squatting and

3    kneeling and limits plaintiff specifically to occasional

4    overhead reaching.  The positions cited at step five include

5    receptionist, that is DOT 237.367-038.  And according to the

6    DOT, that requires frequent reaching, making it inconsistent

7    with the RFC determination.  That inconsistency was not

8    explained by the vocational expert.  I note that the reason for

9    that is the hypothetical posed at step five included a

10   requirement of frequent reaching, which is inconsistent with the

11   RFC.  That's at page 75 of the Administrative Transcript.  The

12   same error was committed with regard to the position of cashier

13   II, which is DOT 211.462-010, which requires frequent reaching,

14   which is inconsistent with the RFC in this case.

15          The same error is committed with regard to stooping,

16   kneeling, crouching -- I'm sorry, the error I find is harmless,

17   however, because the step four determination is supported.  The

18   hypothetical that was given to the vocational expert at the step

19   four analysis specified occasional reaching overhead

20   bilaterally.  That's page 71.  The vocational expert said that

21   plaintiff could perform her past relevant work as a utilization

22   review coordinator at page 71.  And according to the DOT,

23   specifically 079.267-010, that requires only occasional

24   reaching.

25          I note that there's also a medical opinion from

 1   Dr. Dipti Bhoiwala from May 24, 2023.  That's at 389 to 392 of

 2   the Administrative Transcript.  It is extremely limiting.  It

 3   limits plaintiff basically to less than sedentary work.  The

 4   Administrative Law Judge concluded that was not persuasive and

 5   cited reasons.  First, it was issued after the date of last

 6   insured status, which is an error.  Second, a limitation of

 7   sedentary work is not supported by Dr. Bhoiwala's own notes.

 8   Three, it's inconsistent with other evidence of record, which

 9   showed a normal gait and stance, et cetera.  And four, while the

10   plaintiff has joint arthritis, no impairment could be expected

11   to cause difficulties with her arteries or veins, so no clear

12   explanation for the need to elevate her feet.

13          As I indicated, the first statement is error.  We

14   don't really know to what extent the Administrative Law Judge

15   placed reliance on the mistaken fact that this was issued after

16   the date of last insured status, but I find no error.  The

17   treatment records which are discussed by the Administrative Law

18   Judge in depth at pages 16 and 17, including 3F, 4F, and 5F, do

19   not support the doctor's opinions.  They do reflect occasional

20   flare ups of joint pain and swelling, but also show that those

21   conditions are generally controlled, especially on Enbrel.

22          I note that the opinion of Dr. Bhoiwala on July 10,

23   2020, that plaintiff was 100 percent disabled, it was properly

24   rejected by the Administrative Law Judge as addressing a matter

25   reserved to the Commissioner.

1        The subjective complaints of pain by the plaintiff

2    was subject to evaluation pursuant to well-accepted guidelines

3    set out, among other things, in SSR 16-3p.  When addressing

4    subjective reports of pain and other limitations or conditions,

5    the ALJ must consider relevant factors, including daily

6    activities, location, duration, frequency, and intensity of

7    symptoms, any precipitating or aggravating factors, the type,

8    dosage, effectiveness, and side effects of medications taken,

9    other treatment received, and other measures taken to relieve

10   symptoms.

11       If there's a rejection of the subjective complaints,

12   there must be an articulation of the reasoning sufficient,

13   again, to allow meaningful judicial review.  And, of course, it

14   is well accepted that an ALJ's assessment of an individual's

15   subjective complaints regarding pain and other symptoms is

16   entitled to substantial deference by a reviewing court, *Aponte*

17   *v. Secretary of Department of Health and Human Services of the*

18   *United States*, 728 F.2d 588, Second Circuit, 1984.

19       I also note that a plaintiff need not be found to be

20   pain free in order to be found not disabled, *Wendy L.B. v.*

21   *Kijakazi*, 2023 WL 3728557, from the Northern District of New

22   York, May 5, 2023.

23       I also acknowledge the requirements of Social

24   Security Ruling 03-2p, although -- and it requires that a

25   plaintiff be diagnosed with regional pain syndrome, which was

1    not the case here.  Nonetheless, the Administrative Law Judge

2    applied the two step analysis for determining the extent to

3    which plaintiff's subjective complaints are supported.  Those

4    complaints were dismissed entirely -- almost entirely by the

5    Administrative Law Judge at pages 16 to 17.  I note that one of

6    the reasons was plaintiff apparently referenced increased pain

7    complaints and those were erroneously attributed to post date of

8    last insured status at page 17.

9         The Administrative Law Judge concluded that there was

10   insufficient evidence to support the pain complaints mostly at

11   page 16 and 17, and there was heavy reliance on matters that

12   occurred after the date of last insured status.  There's no

13   explanation that would suggest that if credited, those

14   complaints wrongly attributed to post-DLI would yield the same

15   result.  I don't have a firm conviction that that's the case, we

16   simply don't know to what extent they were discounted because of

17   the error in attributing them to post-DLI, so I find error in

18   that regard and it affects the ALJ's decision regarding both the

19   RFC determination, the treatment of plaintiff's pain complaints,

20   and the hypothetical posed to the vocational expert at step

21   four.

22        So I will grant plaintiff judgment on the pleadings

23   without a directed finding of disability because I do not find

24   persuasive evidence of disability, and order that the matter be

25   remanded for proper consideration of the record evidence,

TERRI D. v. SOCIAL SECURITY                    17

1    including any evidence before the date of last insured status.

2              Thank you, both, for excellent presentations and I

3    hope you have a good day.

4              MS. GOTTESMAN:  Thank you, your Honor.

5              MS. COHN:  Thank you.

6              (Time noted:  2:45 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3

 4                    CERTIFICATE OF OFFICIAL REPORTER

 5

 6

 7              I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

 8    NYRCR, Official U.S. Court Reporter, in and for the United

 9    States District Court for the Northern District of New York, DO

10    HEREBY CERTIFY that pursuant to Section 753, Title 28, United

11    States Code, that the foregoing is a true and correct transcript

12    of the stenographically reported proceedings held in the

13    above-entitled matter and that the transcript page format is in

14    conformance with the regulations of the Judicial Conference of

15    the United States.

16

17              Dated this 12th day of August, 2025.

18

19              s/ Hannah F. Cavanaugh_____

20              HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

21              Official U.S. Court Reporter

22

23

24

25
```